UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| THOMAS D. LANE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 3:13-CV-519 JD |
| v. | ) |
| | ) |
| CORIZON HEALTHCARE, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

Thomas D. Lane, a *pro se* prisoner, filed a complaint under 42 U.S.C. § 1983, along with a "Petition for an Order for Protection," complaining that medical staff at Westville Correctional Facility ("Westville") have been "stalking" and "harassing" him, and have failed to prescribe a specific dosage of a medicine for acid reflux that he believes is needed. [ECF No. 1, 5.]

I.  Screening Pursuant to 28 U.S.C. § 1915A

The Court must review a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. Courts apply the same standard when screening a prisoner complaint as when deciding a motion under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 603. Nevertheless, the Court must bear in mind that a *pro se* complaint is entitled to liberal construction, "however inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Lane's filings are not a model of clarity, but it can be discerned that he has several chronic health conditions, including hypertension, high cholesterol, acid reflux, hyperthyroidism, and schizotypal personality disorder. [ECF No. 1-1 at 1-6.] He has been taking medications while at the Indiana Department of Correction ("IDOC") for several of these conditions, including Zantac for acid reflux. [*Id.* at 3, 5.] He was transferred to Westville sometime in April 2013,[1] and on May 15 or 16, 2013, was seen by an unnamed prison doctor. [ECF No. 1. at 3.] He told the doctor he wanted 600 milligrams of Zantac per day, as he had previously taken, but the doctor would only prescribe 300 milligrams per day. The doctor allegedly told him that he would not be getting an additional dosage of Zantac, nor would the doctor order any additional testing of Lane's stomach problems, unless his problems became more serious, such as bleeding in his stomach. [ECF No. 1 at 3.] Lane complains that this doctor's "tone" was "not very nice," and he allegedly told Lane he was aware of a prior lawsuit he had filed while at Putnamville Correctional Facility. [*Id.*] Lane was unhappy with the doctor's comments, and responded, "You guys leave me alone and stay away from me and I'll never come back over here again." [*Id.* at 4.] The doctor allegedly responded that medical staff would continue to call Lane over for medical treatment until he was released from prison "just to cover us." [*Id.*]

After this visit, on May 17, 2013, a nurse brought Lane his medications, including 300 milligrams of Zantac, along with another medication for reducing heartburn and indigestion. [ECF No. 5 at 4.] Lane states that he tried this medication for three days but it did not work, and he

---

[1] Lane was previously housed at Putnamville Correctional Facility, and filed a civil rights suit in the Southern District of Indiana complaining about the conditions of his confinement at that facility, including his medical care. *See Lane v. Knight, et al.*, No. 2:13-CV-93 (S.D. Ind. order dated Apr. 12, 2013). His case was dismissed pursuant to 28 U.S.C. § 1915A on April 12, 2013. *Id.* It was noted in the order of dismissal that Lane had recently been transferred from Putnamville and was presently incarcerated at Westville. *Id.* at 3.

continued to suffer stomach problems making it difficult for him to eat. It appears from an attachment Lane submits that on May 28, 2013, he refused all his medications, despite being instructed by medical staff that he "should take [his] life saving medication." [ECF No. 1-2 at 1.] He complains that to date, he is still having problems with acid reflux despite the medications he was prescribed. [ECF No. 1 at 4-5.]

Lane further complains that he has not been provided with medical records he requested. [ECF No. 1 at 4.] Specifically, he states that he asked for copies of certain medical records for use in this lawsuit, but because he did not have sufficient funds in his account, he could not obtain them. [*Id.*] He asserts that "somehow these acts are violating federal law, constitutional amendments[.]" [*Id.*]

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citation omitted).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). A mere disagreement with medical professionals about the best course of treatment does not establish deliberate indifference, nor does negligence or even medical practice, since "the Eighth Amendment does not codify common law torts." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Additionally, prisoners are not entitled to demand specific care, nor are they entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Although an inmate is entitled to a "minimum" level of adequate care, the Eighth Amendment does not entitle him to "care that is as good as he would receive if he were a free person, let alone an affluent free person." *Maggert v. Hanks*, 131 F.3d 670, 671-72 (7th Cir. 1997). When an inmate has received some form of treatment for a medical condition, to establish deliberate indifference he must show that the treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition." *Arnett*, 658 F.3d at 751.

Here, giving Lane the inferences to which he is entitled, he has alleged a serious medical need, namely, acid reflux which interferes with his ability to eat and for which he has been prescribed medication. On the subjective prong, he claims that the doctor he saw at Westville refused to provide him with necessary medication or authorize further testing of his stomach problem, and that despite the medications he is taking he continues to have significant problems with heartburn and indigestion. Although further factual development may show that Lane's treatment

is adequate under the circumstances, he has alleged enough to proceed past the pleading stage against the doctor on an Eighth Amendment claim.

As indicated above, however, Lane apparently does not know the identity of the prison doctor. As a practical matter this case cannot proceed against an unnamed defendant. *See Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997). Therefore, the Court will order that service be made on the doctor's employer, Corizon Correctional Healthcare, for the sole purpose of identifying the doctor through discovery. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996). The Court will set deadlines for Lane to conduct discovery and to file an amended complaint containing the name of the doctor, which he must do in order for this case to proceed. If he can obtain the name of the doctor on his own without having to conduct discovery, he may of course do so. In either event, if he fails to submit an amended complaint containing the name of the doctor by the deadline, this case will be dismissed for failure to state a claim against a viable defendant.

As for Lane's allegations regarding his medical records, they do not state a plausible constitutional claim. Lane is not entitled to free copies or other public subsidy of the costs of litigating this case, even if he is proceeding *in forma pauperis*. *See Lindell v. McCallum*, 352 F.3d 1107, 1111 (7th Cir. 2003) (indigent *pro se* prisoner had no "constitutional entitlement to subsidy . . . to prosecute a civil suit"); *Lucien v. DeTella*, 141 F.3d 773, 774 (7th Cir. 1998) ("All § 1915 has ever done is excuse *pre*-payment of the docket fees; a litigant remains liable for them, and for other costs") (emphasis in original). Nor does the prison's refusal to provide Lane with free copies of his medical records constitute the type of "deliberate indifference to a serious medical need" that would be actionable under the Eighth Amendment. *See Estelle*, 429 U.S. at 104. To the extent Lane was seeking the records to try to discern the identity of the doctor he saw, he will be able to do so

through discovery as ordered below. However, his allegations do not present an actionable constitutional claim.

II.     Preliminary Injunction

The Court turns then to the motion for a preliminary injunction. [ECF No. 5.] "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). To obtain preliminary injunctive relief, the moving party must demonstrate that he or she has a reasonable likelihood of success on the merits, lacks an adequate remedy at law, and will suffer irreparable harm during the pendency of the suit if immediate relief is not granted. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).

In addition to the allegations outlined in his complaint, Lane submits documentation in support of his motion showing that on April 10, 2013, he submitted a written request asking for a "chronic care" visit to discuss his medication with the doctor. [ECF No. 5-1 at 1.] He was told that his chronic care visit was not scheduled until May 2013, but that if he "would like to be seen" before his next scheduled visit, he should submit a health care request and check "sick call," explaining the nature of his medical problem. [ECF No. 5-1 at 1.] On April 29, 2013, he submitted a form stating he wanted it put "in writing" that medical staff was denying him the medications he needed, including Zantac at a dosage of 600 milligrams per day. [ECF No. 5-2 at 1.] He was told to discuss this issue with the doctor at his chronic care visit. [*Id.*] On May 6, 2013, he submitted a request stating that he wanted an increased dosage of Zantac and was consulting with a lawyer about his medical care. [ECF No. 5-4 at 1.] As recounted above, he was then seen by the doctor on May 15

or 16, but did not like the doctor's "tone," or the decision he made about the dosage of Zantac he was to receive.

In his motion, Lane seeks an order prohibiting medical staff from "threatening, stalking. . . annoying, contacting me directly or indirectly communicating with me." [ECF No. 5 at 6.] Although not entirely clear, Lane appears to be asking this Court to order medical staff *not* to provide him with any medical care and to cease all contact with him. As stated above, the prison has a legal obligation to provide Lane with adequate medical care, and the Court will not order prison medical staff to refuse him the medical care he may need. Such action would be particular inappropriate since it is apparent from Lane's submission that he has several chronic medical problems. Lane cannot be permitted to "engineer" an Eighth Amendment violation in this fashion. *See Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir. 2005).

Alternatively, Lane wants the Court to order prison medical staff to increase the dosage of Zantac as he has requested. [*See* ECF No. at 1-6.] However, the Eighth Amendment does not entitle him to demand specific forms of medical treatment. *Maggert*, 131 F.3d at 671-72; *Forbes,* 112 F.3d at 267. Furthermore, although Lane argues that he took 600 milligrams of Zantac per day between 2010 and 2012, records he submits show that as of January 2011, he was taking 300 milligrams per day. [ECF No. 1-1 at 3.] This is the dosage he is presently taking, and he also makes clear the doctor recently prescribed another medication for heartburn in addition to the Zantac. [ECF No. 5 at 4.] Although Lane believes an additional dosage of Zantac is needed, his doctor disagrees, and a mere disagreement with medical professionals does not establish Eighth Amendment liability, let alone provide a basis for granting emergency injunctive relief.

Lane is entitled to adequate care that meets his serious medical needs, and if his medication is not working, he may be entitled to a different treatment. *See Greeno*, 414 F.3d at 654-55 (observing that prison medical staff cannot simply continue with a course of treatment that is known to be ineffective). However, his filings show he is under the regular care of doctors, and can also obtain additional visits with medical personnel when needed if he submits a request to be seen at sick call. To date, he has not been cooperative with medical staff, instead demanding that they put "in writing" their refusal to provide him with the dosage of Zantac he wanted so he could pursue a lawsuit. He also gave up taking the new heartburn medicine prescribed by the doctor after only three days, and later refused to take all his medications, including those needed for other serious medical conditions. Under these circumstances, Lane has not made a sufficient showing that the doctor has been deliberately indifferent to his medical needs, or that absent a Court order requiring medical staff to "leave him alone" or to increase his dosage of Zantac, he will suffer irreparable injury. The Court does not foreclose the possibility that Lane may be able to show at later stages of the litigation that his past treatment was inadequate, or that he is in need of some additional treatment related to his present care. However, he does not satisfy the stringent requirements for obtaining preliminary injunctive relief based on the present motion, and accordingly, his motion will be denied.

III.     Discovery

As a final matter, Lane has filed a separate motion seeking expansive discovery pertaining to his medical treatment since 2010. [ECF No. 4.] Such a request is premature. Lane is being granted leave to conduct limited discovery to learn the identity of the doctor who treated him, but at this stage discovery on the merits is not appropriate, since no defendant has been served or answered the complaint. The assigned magistrate judge will issue orders directing further proceedings, including

those pertaining to discovery, after the defendant is identified, served, and files an answer to the complaint. To the extent Lane is seeking initial disclosures pursuant to FEDERAL RULE OF CIVIL PROCEDURE 26, such a request is improper in any event because cases brought by *pro se* prisoners are exempt from the automatic disclosure requirement. FED. R. CIV. P. 26(a)(1)(B)(iv).

For these reasons, the Court:

(1) GRANTS the plaintiff leave to proceed against Corizon Correctional Healthcare for the sole purpose of conducting discovery to identify the doctor who allegedly denied him proper medical care for acid reflux at Westville Correctional Facility;

(2) DISMISSES any and all other claims contained in the complaint;

(3) DENIES the motion for a discovery order [ECF No. 4];

(4) DENIES the motion for a protective order [ECF No. 5];

(5) DIRECTS the U.S. Marshals Service to effect service of process on Corizon Correctional Healthcare;

(6) ORDERS Corizon Correctional Healthcare to appear and respond to limited discovery directed to identifying the unnamed prison doctor who treated the plaintiff at Westville Correctional Facility;

(7) WAIVES any obligation by Corizon Correctional Healthcare to answer the complaint;

(8) DIRECTS the clerk to place this cause number on a blank 42 U.S.C. § 1983 Prisoner Complaint form and mail it to the plaintiff along with a copy of this order;

(9) ORDERS that discovery by the plaintiff to determine the identity of the unnamed prison doctor be initiated by September 27, 2013;

(10) ORDERS the plaintiff to file an amended complaint on or before November 29, 2013, which names the prison doctor; and

(11) CAUTIONS him that if he does not file an amended complaint or otherwise respond by the deadline, this case is subject to dismissal without further notice for failure to prosecute.

SO ORDERED.

ENTERED: June 11, 2013

/s/ JON E. DEGUILIO  
Judge  
United States District Court